IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CEDRICK L. DAVIS, | § | |
| TDCJ-CID NO. 1173781, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-06-3606 |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Cedrick L. Davis, has filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging his state court conviction of manslaughter (Docket Entry No. 1). Pending before the court is Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 8). For the reasons stated below, Respondent's Motion for Summary Judgment will be granted, and Davis's Application for a Writ of Habeas Corpus will be denied.

**I. Procedural History**

Davis is an inmate confined by the Texas Department of Criminal Justice, Institutional Division (TDCJ-ID), pursuant to his conviction and sentencing for the offense of manslaughter in cause

number 922950 in the 338th Judicial District Court of Harris County, Texas.[1]

The facts of the underlying crime were summarized by the First Court of Appeals as follows:

> In the early morning hours of September 1, 2002, Joey Garcia drove his car, with José Garcia in the passenger seat, around the parking lot of Pinelake Condominium to see whether Joey could locate the apartment of a female friend. As Joey drove around the complex, José heard a car alarm "chirping" on a car belonging to [Davis] and someone yelling. As they turned around to see who was yelling at them, José "saw the fire" and heard two or three gunshots coming from the direction of where a male was standing; one of the gunshots struck Joey in the face.
>
> When José realized Joey had been shot, José took the driver's seat and drove to a nearby club where they found Houston Police Officers C. Slater and J. Lopez. José returned to the complex to show the officers where the shooting had occurred. After finding two spent shell casings below [Davis]'s apartment, the officers knocked on the door of apartment 68, which was located near the stairwell where José had seen the male. [Davis]'s wife, Monica Davis, answered the door, but refused to allow the officers into her apartment. [Mrs.] Davis denied hearing any gunshots. The officers informed [Mrs.] Davis that an investigator from the police department might later want to talk to her. Sargent D. Bacon arrived, and the officers determined that the car with the chirping alarm was registered to [Davis], who resided in apartment 68.
>
> When the officers returned to apartment 68 for the second time, [Mrs.] Davis answered the door and invited Bacon inside. When Bacon told [Mrs.] Davis he was looking for [Davis], [Mrs.] Davis said she had not seen him that night. [Mrs.] Davis said she had separated from [Davis] and he no longer lived in that

---

[1] Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, pp. 53-54.

>apartment.  Bacon informed [Mrs.] Davis that he had a consent to search form and asked [Mrs.] Davis if he could search the apartment.  The officers did not have an arrest warrant or a search warrant.  Bacon informed [Mrs.] Davis that "[i]t could also be serious if she was hiding [Davis]" from the police.  At first [Mrs.] Davis refused, but she then orally agreed to the search and signed the form.  During the search, the officers found [Davis] hiding in the bedroom closet. [Davis] was placed under arrest and read his legal rights.  At the Houston Police headquarters, Sargent E. Mehl again read [Davis] his rights, interviewed him, and made an audio recording of [Davis]'s statement . . . .  Later that morning, [Davis] also made a recorded statement to Bacon regarding the gun used in the shooting.  Joey died as a result of the gunshot wound.[2]

Davis was indicted for the offense of murder, enhanced by a previous felony conviction of aggravated assault of a peace officer.[3]  He pleaded not guilty to the charge and not true to the enhancement conviction.[4]  On May 22, 2003, the jury found Davis guilty of manslaughter and sentenced him to thirty-five years' imprisonment, with an affirmative finding of use of a deadly weapon.[5]

Davis appealed his conviction to the First Court of Appeals of Texas arguing that the trial court erred in admitting evidence of

---

[2]Davis v. State, No. 01-03-00574-CR, slip op., 2004 WL 2475112, at *1 (Tex. App. -- Houston [1st Dist.] November 4, 2004, pet. ref'd.) (mem. op., not designated for publication), contained in Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, pp. 57-76.

[3]Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, p. 52.

[4]Id. at pp. 53-54.

[5]Id.

the search of his apartment, that the trial court erred in denying his motion to suppress evidence of the illegal search, that he was denied effective assistance of trial counsel, and that the evidence was legally and factually insufficient to support his conviction.[6] The Court of Appeals affirmed the judgment of the trial court.[7] Davis filed a petition for discretionary review in the Texas Court of Criminal Appeals, which refused the petition on May 25, 2005.[8]

On August 21, 2006, Davis filed a state application for a writ of habeas corpus alleging that he did not receive a fair trial because he was denied the right to testify on his own behalf, that he received ineffective assistance of counsel when his attorney failed to allow him to testify on his own behalf, and that the evidence was insufficient to support his conviction.[9] The trial court entered findings of fact and conclusions of law and recommended that relief be denied.[10] The Court of Criminal Appeals

---

[6] Davis v. State, No. 01-03-00574-CR, Appellant's Brief.

[7] Davis v. State, No. 01-03-00574-CR, slip op., 2004 WL 2475112, at *9 (Tex. App. -- Houston [1st Dist.] November 4, 2004, pet. ref'd) (mem. op., not designated for publication), contained in Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, pp. 57-76.

[8] Davis v. State, No. PD-0344-05, 2005 Tex. Crim. App. LEXIS 793, at *1.

[9] Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, pp. 7, 10-11.

[10] Id. at pp. 40-43.

denied relief without written order on the findings of the trial court on November 15, 2006.[11]

Davis filed the pending federal habeas corpus petition on November 16, 2006, claiming that

> (1) he did not receive a fair trial because he was denied the right to testify on his own behalf; and
>
> (2) he received ineffective assistance of counsel when his attorney failed to allow him to testify on his own behalf.[12]

Respondent moved for summary judgment[13] to which Davis filed a response.[14]

## II.  Standard of Review

**A.  Habeas Corpus**

Davis's federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997) (holding that AEDPA applies to noncapital cases filed after its effective date, April 24, 1996).  The intent of the AEDPA is to avoid federal habeas "retrials" and "ensure that state-court convictions are

---

[11] Id. at cover.

[12] Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket Entry No. 1, pp. 4-10.

[13] Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 8, pp. 13-15.

[14] Petitioner Davis's Response to Respondent Quarterman's Motion for Summary Judgment, Docket Entry No. 11, pp. 1-5.

given effect to the extent possible under [the] law." Bell v. Cone, 122 S. Ct. 1843, 1849 (2002) (citing Williams v. Taylor, 120 S. Ct. 1495, 1518 (2000)).

The provisions of Section 2254(d) create a highly deferential standard, requiring that state court decisions be given the benefit of the doubt. Woodford v. Visciotti, 123 S. Ct. 357, 360 (2002). A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's decision

>     (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2).'" Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001) (quoting Corwin v. Johnson, 150 F.3d 467, 471 (5th Cir. 1998)).

A state court decision is contrary to clearly established law if the decision contradicts the governing law set forth by the Supreme Court or if the state court decides a case differently than the Court's precedent when the facts are materially indistinguishable. Early v. Packer, 123 S. Ct. 362, 365 (2002)

(quoting Williams, 120 S. Ct. at 1519). A state court unreasonably applies federal law if the court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Williams, 120 S. Ct. at 1523. To be an unreasonable application of federal law the state decision must be objectively unreasonable and more than simply incorrect or erroneous. Lockyer v. Andrade, 123 S. Ct. 1166, 1174 (2003) (citing Williams, 120 S. Ct. at 1521-23).

Because the AEDPA grants great deference to state determinations of factual issues, a claim adjudicated on its merits in state court and based on factual decisions will not be overturned on factual grounds unless the court determines that the decision was both incorrect and objectively unreasonable. Williams, 120 S. Ct. at 1522. In reviewing a federal habeas petition, the court must presume that a factual determination made by the state court is correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.   Summary Judgment**

A court may grant summary judgment when the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The moving party has the responsibility of informing the court of the basis

for its summary judgment motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .'" that demonstrate no genuine issue of material fact. Celotex Corp., 106 S. Ct. at 2553. In response, the non-movant must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, or admissions on file show that there is a genuine issue of material fact requiring resolution through a trial. Id. If the nonmoving party is unable to meet this burden, the motion for summary judgment will be granted. Fed R. Civ. P. 56(c).

Rule 56 of the Federal Rules of Civil Procedure "applies with equal force in the context of habeas corpus cases." Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000). The rule, however, only applies to the extent that it does not conflict with habeas rules. Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), overruled on other grounds by Tennard v. Dretke, 124 S. Ct. 2562 (2004). Generally, in ruling on a motion for summary judgment the court resolves any doubts and draws any inferences in favor of the nonmoving party, Hunt v. Cromartie, 119 S. Ct. 1545, 1551-52 (1999) (quoting Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986)), but 28 U.S.C. § 2254(e)(1) commands that factual findings of the state court are to be presumed correct. Thus, 28 U.S.C. § 2254(e)(1) overrides the general summary judgment rule. Smith, 311 F.3d at 668. The petitioner is required to rebut the

presumption of correctness by clear and convincing evidence; otherwise, the court will presume the factual determination of the state court is correct. Id.; 28 U.S.C. § 2254(e)(1).

### III.  Analysis

Davis alleges that he was denied the right to testify and that his trial counsel rendered ineffective assistance by failing to allow him to testify.[15] Although Davis presents two separate claims, the Fifth Circuit has previously held that when a defendant asserts that his counsel interfered with his right to testify, the appropriate claim is an ineffective assistance of counsel claim. United States v. Mullins, 315 F.3d 449, 452-53 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001). Therefore, the claims will be discussed together.

Under the standard established in Strickland v. Washington, 104 S. Ct. 2052 (1984), a petitioner asserting an ineffective assistance of counsel claim must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defendant's case. Id. at 2064. To be entitled to habeas corpus relief a petitioner must satisfy both prongs of the test. Id.

Performance is deficient if it falls below an objective standard of reasonableness. Id.  In making this determination

---

[15]Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket Entry No. 1, pp. 4-10.

judicial scrutiny of counsel's performance is to be highly deferential with a strong presumption that counsel rendered adequate assistance and that the challenged conduct was a product of reasoned trial strategy.  Id. at 2065.  See also West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996) (quoting Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992)).  The court must remain mindful that the decision whether or not to have a defendant testify "'is a judgment call which should not be easily condemned with the benefit of hindsight.'" Mullins, 315 F.3d at 453 (quoting Robison v. Johnson, 151 F.3d 256, 261 (5th Cir. 1998)).

The appropriate test for determining actual prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 104 S. Ct. at 2068.  In making this determination the focus is on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.  Lockhart v. Fretwell, 113 S. Ct. 838, 844 (1993) (citing Strickland, 104 S. Ct. at 2064).  A "mere possibility" that a different result might have occurred is not enough to demonstrate prejudice.  Lamb v. Johnson, 179 F.3d 352, 359 (5th Cir. 1999) (citing Ransom v. Johnson, 126 F.3d 716, 723 (5th Cir. 1997)).

In order for the court to grant habeas relief it must determine that the state court's denial of relief was contrary to,

or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). See Lamb, 179 F.3d at 356 (citing Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997)) ("The ultimate determination of whether counsel was constitutionally effective is a mixed question of law and fact."). The relevant issue before the court is, therefore, "whether the state court's decision – that [Davis] did not make the Strickland-showing – was contrary to, or an unreasonable application of, the standards, provided by clearly established federal law (Strickland), for succeeding on his [ineffective assistance of counsel] claim." Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) (emphasis omitted).

Davis asserted the same claims in his state habeas application.[16] Jonathan Gluckman, Davis's trial counsel, denied the allegations in a written affidavit.[17] The state court weighed Davis's allegations against Gluckman's affidavit and made the following factual findings and conclusions of law:

> 1. The Court finds that the facts asserted in the affidavit of Jonathan Gluckman are true and that the affidavit of Gluckman is credible.
>
> . . .
>
> 3. The Court finds . . . that Jonathan Gluckman advised [Davis] of his right to either testify or

---

[16] Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, p. 7.

[17] Id. at pp. 35-37.

remain silent and that this choice was [Davis]'s choice and that counsel could not override [Davis]'s choice.

4. The Court finds . . . that Gluckman advised [Davis] that were he to testify, the jury would be allowed to hear that [Davis] had previously been to prison convicted of aggravated assault of a peace officer, and counsel further advised [Davis] of the possible effect of such information on the jury.

5. The Court finds . . . that Gluckman advised [Davis] that his version of events leading to the shooting would be made known to the jury when the State played . . . [Davis]'s audiotaped interview and, based upon the contents of the tape, . . . [Davis] would most likely be entitled to a jury charge including the legal defense of Defense of Property.

6. The Court finds . . . that Gluckman advised [Davis] that he would be able to tell his story to the jury through the taped interview without having to be impeached by his prior violent aggravated felony.

7. The Court finds . . . that [Davis] understood and agreed to Gluckman's rational[e] as to whether [Davis] should testify or not.

8. The Court finds unpersuasive . . . [Davis]'s claim that Gluckman refused to allow [Davis] to testify.

9. The Court finds . . . that [Davis] never expressed a desire to testify.

. . .

1. [Davis] fails to show that his trial counsel's advice regarding whether he should testify was deficient or that it rendered trial counsel ineffective.

2. [Davis] fails to show in all things that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability

> that the result of the proceeding would have been different.
>
> 3. The totality of the representation afforded [to] . . . [Davis] was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.[18]

The Texas Court of Criminal Appeals adopted these findings when it denied petitioner's claims.[19]  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 123 S. Ct. 1029, 1041 (2003).

A criminal defendant has a constitutional right to take the stand and testify in his own defense. Sayre, 238 F.3d at 634 (citing Rock v. Arkansas, 107 S. Ct. 2704, 2709-10 (1987)). Only the defendant, not his counsel, has the ability to waive this right, and it must be done knowingly and voluntarily. Mullins, 315 F.3d at 452 (citing Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997)).  Because the state habeas court found that Davis agreed with his counsel's advice that he not testify, Davis must present

---

[18]Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, pp. 40-43.

[19]Id. at cover.

clear and convincing evidence to overcome the presumption of correctness attributed to this factual finding. 28 U.S.C. § 2254(e)(1).

Davis has alleged no facts to support his assertion that he was prevented from testifying. He simply states in both his federal and state applications that "[he] wanted to testify . . . . But he was denied that opportunity."[20] The record does not show that Davis ever made known to the trial court that his counsel was preventing him from testifying. Without more than bare allegations, a petitioner cannot trigger habeas relief. Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991) (holding "[a] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied [to] him. It just is too facile a tactic to be allowed to succeed."). See also Turcios v. Dretke, No. Civ. A. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing Underwood and emphasizing that a petitioner in a habeas proceeding cannot obtain relief "merely by stating . . . that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand."). Other than Davis's own statements, there is nothing in

---

[20]Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket Entry No. 1, p. 5 and Appendix A, Inmate Declaration; Ex parte Davis, Appl. No. WR-66,236-01, Docket Entry No. 9, pp. 7, 15.

the record to support his claim that he was denied the right to testify. Therefore, the court finds that Davis has failed to overcome the presumption of correctness with regard to this factual finding.

Because the record in this case indicates that Davis was aware of his right to testify but chose not to do so based on counsel's advice, the court must address whether counsel's advice constituted sound trial strategy. See Mullins, 315 F.3d at 453-54. The court understands Davis to allege that his counsel was ineffective for not permitting him to testify because only Davis's testimony would have allowed the jury to understand his defenses -- self-defense and defense of property.[21] (Davis apparently would have testified that he never meant to hurt anyone, that he thought Joey and José Garcia were stealing his car, and that he was defending his car.)[22] In his affidavit Davis's trial counsel stated that he advised Davis that testifying would enable the jury to hear of Davis's previous conviction for aggravated assault of a peace officer and that this would harm Davis's case.[23] Based on this information the jury could have inferred that "[Davis] was prone to shoot first and ask

---

[21]Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket Entry No. 1, p. 7.

[22]Petitioner Davis's Response to Respondent Quarterman's Motion for Summary Judgment, Docket Entry No. 11, p. 3.

[23]Ex parte Davis, Appl. No. WR-66,236-01, Affidavit of Jonathan A. Gluckman, Docket Entry No. 9, p. 36.

questions later, a perception [c]ounsel wanted to avoid."[24]  On the other hand, even without testifying, Davis's version of the events was still heard by the jury when the prosecutor played Davis's audiotaped interview made by the homicide investigators, and Davis was entitled to a jury charge that included defense of property and self-defense.[25]  In light of the danger Davis's testimony posed and the fact that Davis's story could be told through his taped interview, the court concludes that the state court's determination that Davis failed to meet the first prong of Strickland is a reasonable application of clearly established federal law.

Davis has also failed to demonstrate prejudice.  Although Davis asserts in both his federal and state applications that "[w]ithout his testimony, there was no way for the jury to adequately understand the defense," he fails to acknowledge that the jury heard his version of the events in the audiotaped interview.[26]  In the interview Davis stated that he thought the men (Joey and José Garcia) may have had a weapon and were attempting to steal his car.[27]  The jury also received instructions on both self-defense and defense of property.[28]  Because the jury was made

---

[24]Id.

[25]Id.; Reporter's Record, Vol. 6, p. 38.

[26]Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket Entry No. 1, p. 7.

[27]State's Exhibit 39, tape recording of confession.

[28]Reporter's Record, Vol. 6, p. 38.

aware of everything that Davis asserts he would have testified to, Davis has failed to demonstrate that he was prejudiced.  The court therefore concludes that the state court's determination that Davis failed to meet <u>Strickland</u>'s second prong was not contrary to or an unreasonable application of federal law.

## IV.  <u>Conclusion and Order</u>

The court **ORDERS** the following:

1. Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**.

2. Davis's Application for a Writ of Habeas Corpus Pursuant to U.S.C. § 2254 (Docket Entry No. 1) is **DENIED**.

**SIGNED** at Houston, Texas, on this 29th day of June, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE